## Evans *versus* Matson and Hall.

Evans being indebted to Matson, transferred his goods to his daughter; she sold them to his son, in whose possession Matson levied on them as the property of Evans. In an action against Matson by the son, there was evidence of fraud in the transfer to the daughter, and that the purchase by the son was not bonâ fide. *Held*, that evidence of sales of land, about the same time, by Evans to these and other children, and of declarations by Evans and his daughter, was admissible either as a defence to the action or in mitigation of damages.

October 24th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Jefferson county*: No. 40, to October and November Term 1867.

This was an action of trespass by Elisha. L. Evans against Uriah Matson and E. Hall, assignees of T. S. Mitchell, late sheriff of Jefferson county. The writ issued April 3d 1866.

In April 1856 B. F. Lucas recovered a judgment against one Corby, and levied on lumber as the property of Corby; the lumber being advertised to be sold by the sheriff, T. S. Mitchell, Jared B. Evans, with sureties, entered into bond to him for its delivery on the day of sale. The lumber was not forthcoming at the sale, and Lucas sued Mitchell, and Matson, Hall and others, his sureties on his official bond. Lucas on the 24th of December 1859 recovered a judgment for $1835.65, which the sureties paid.

Mitchell then assigned to his sureties the bond given to him by Jared B. Evans, on which Matson and the other sureties of the sheriff recovered against Evans a judgment for $2485.74 (1 P. F. Smith 366). On this judgment an execution was issued, and the sheriff on the 25th of July 1865, "by direction of the attorney for the plaintiff," levied on a stock of store goods "as the property of J. B. Evans, which goods so levied upon were claimed by one Elisha L. Evans and disclaimed by J. B. Evans."

The sheriff retained the keys of the store-house, and held possession of the goods until the 28th of July, when by direction of the plaintiffs and their attorneys he returned the keys and the

[Evans v. Matson.]

goods to Elisha L. Evans. This levy was the alleged trespass for which this suit was brought.

On the trial before Campbell, P. J., the plaintiff gave evidence of his purchase of the goods from his sister Sophia Evans, and of the damage sustained.

The defendants gave evidence of the assignment of the store goods by J. B. Evans to Sophia Evans, that no money was paid at the time ; that the goods did not change their place ; that J. B. Evans, his son Charles, and Sophia all attended the store ; that both Elisha and Sophia lived in J. B. Evans's family—with other evidence on the question of the ownership of the goods in J. B. Evans.

Under objection and exception, they gave in evidence the record of the suit of Lucas against the sheriff and his sureties ; also a deed from J. B. Evans to E. L. Evans, dated January 24th 1860, for 425 acres of land and 3 town lots ; also a deed from J. B. Evans to Sophia Evans, dated January 11th 1860, for two lots ; also deeds from Samuel Crawford to Charles and Jared Evans and Sophia Evans, dated in July 1863, with the following testimony of Crawford :—

" On the piece of land deeded to C. and J. Evans, the contract was made between Jared and White. I made the deed at Jared's request. Don't know who paid the purchase-money. Sophia articled with me for the piece deeded to Sophia. Jared Evans paid the money. Directed deed to be made in Sophia's name. I took acknowledgment of several deeds for J. Evans. At that time he stated there were some judgments coming against him, and he didn't want to have any real estate when they did come. One was made to Mrs. Elliott. This was in 1860. At that time Jared had a store in Rockdale. The store is there yet. I saw no change in the store except the name of the books. When the family went up it was attended to by the family. There never was a sign up. I have been there lately. The store and dwelling-house are on the lot conveyed to Sophia. At the time the lot was conveyed it was worth $2000. The lot conveyed to Jared and Charles was worth $500. Jared is the father ; others his children. They live all in one family."

Also the testimony of R. Arthurs, who said :—

" I think Judge Evans has a sister named Elliott ; I read the description of deed of J. B. Evans to E. L. Evans ; those deeds contain about the amount of J. B.'s real estate ; I was not acquainted with J. B. Evans's personal property after he left Brookville."

Of Joel Miller, who said :—

" I went once to Mr. Evans's store, and Sophia and Jared were behind the counter. Mr. Evans was talking to Sophia, and said

if she would take the property it would keep him from paying the debts of Mr. Matson and Mr. Hall."

And of Peninah Williams, who said:—

"Sophia said her father transferred to her his property to save it; I told her what folks had said, that he had put his property out of his hands to cheat his creditors; she said it was not to cheat his creditors, it was a dishonest debt coming on him, and he never calculated to pay them; she said it was bail-money to Mr. Matson; she said he signed his property over to her to save it."

There was a verdict for the defendants.

The plaintiff removed the case to the Supreme Court, and assigned for error the admission of the evidence objected to.

*Gordon*, for plaintiff in error, cited Shaw *v.* Levy, 17 S. & R. 99; Hazard *v.* Hamlin, 5 Watts 201; St. Clair *v.* Healy, 4 Wright 417.

*W. P. Jenks*, for defendants in error, cited Shaw *v.* Levy, 17 S. & R. 102; Garrigues *v.* Harris, 5 Harris 350.

The opinion of the court was delivered, October 31st 1867, by

READ, J.—In April 1856, B. F. Lucas entered a judgment in the Common Pleas of Jefferson county against one William Corby for $1500, and issued an execution, and levied upon 300,000 feet of boards, which were to be sold on the 24th of April 1856, at the borough of Brookville. Jared D. Evans, with two others, gave a bond to the sheriff in $10,000, conditioned for the delivery of the lumber at Brookville, on the said 24th of April, to answer the exigencies of the executions, upon which it had been seized— took possession of the lumber, and run it out of the country, and prevented Lucas from realizing the fruits of his executions. Lucas brought suit upon the official bond against the sheriff and sureties, and recovered a judgment for $1835.65, which the sureties were obliged to pay. The bond given by Evans and others was assigned to the sureties and others, and judgment recovered upon it on the 14th February 1865, for $2485.74, on which a fi. fa. was issued, and levied on a store of goods as the property of J. D. Evans, on the 25th July 1865, which levy was withdrawn on the 28th July, three days afterwards. The plaintiff alleging these goods were his, then brought this action against the sureties. On the trial the defendants offered to prove and did prove, these circumstances, and that J. D. Evans to avoid the payment of this debt, fraudulently conveyed his real estate to members of his family, and sold this store to his daughter Sophia, who on the 1st May 1865 sold it to her brother, the plaintiff, Elisha D. Evans.

[*Evans v. Matson.*]

The store and dwelling were together, and belonged to the father, J. D. Evans, and notwithstanding these alleged sales, he and his children resided in the house, and he attended the store in the alleged capacity of a clerk. It was alleged, and such was the bearing of the evidence, that neither of the sales of the goods were bonâ fide or for a valuable consideration, and were with full notice of all the facts. Jared B. Evans said, he had his affairs arranged so it would not hurt him much; he expected to have claims against him he ought not to pay—and referring particularly to claims growing out of the boards—and his daughter Sophia " said her father transferred to her his property to save it." " She said it was not to cheat his creditors, it was a dishonest debt coming on him, and he never calculated to pay them; she said it was bail-money to Mr. Matson; she said, he signed his property over to her to save it."

There are no exceptions to the charge of the court, which is not on the paper-books, and the only exceptions are to the admission of evidence tending to prove the above facts, which, if proved, the plaintiff contends broadly would be no defence, and therefore the evidence was inadmissible.

The simple question then is, if from the evidence thus admitted, the jury could, if they believed it, find the goods were Jared D. Evans's and not the plaintiff's, whether it would not be a full defence to this action, and by the verdict that would appear to have been the opinion of the jury.

Or if the jury did not so think, but from the circumstances of the whole case were of opinion the defendants had reasonable ground to believe it was Jared Evans's property, then the evidence was clearly admissible in mitigation of damages.

In either aspect, and for either purpose, the court committed no error in admitting the evidence.

Judgment affirmed.